**TEE–HIT–TON TRIBE OF TLINGIT INDIANS OF ALASKA v. OLSON, Alaska Fishery Management Supervisor of the Fish & Wildlife Service of U. S. Department of the Interior, et al.**

**No. 11006.**

Circuit Court of Appeals, Ninth Circuit.
March 28, 1947.

William L. Paul, Jr., of Juneau, Alaska, and Frederick Paul, of Seattle, Wash., for appellant.

David L. Bazelon, Asst. Atty. Gen., and John C. Harrington, Atty., Dept. of Justice, of Washington, D. C., for appellee.

Kerr, McCord & Carey, Evan S. McCord, and Stephen V. Carey, all of Seattle, Wash., and H. L. Faulkner, of Juneau, Alaska, for amicus curiæ.

Before GARRECHT, DENMAN, MATHEWS, STEPHENS, HEALY, BONE, and ORR, Circuit Judges.

DENMAN, Circuit Judge.

The Tee-Hit-Ton Tribe of Alaska Indians, hereinafter called the Tribe, appeals from a judgment sustaining a demurrer to and dismissing its complaint for an injunction against the defendants, federal officeholders and employees of the Fish and Wildlife Service of the United States Department of the Interior, hereinafter called the Service, for the destruction of its claimed exclusive right to take fish for commercial purposes in the waters of Salmon Bay and Lake Bay, sometimes called Barnes Lake, on the northeast coast of Prince of Wales Island, southeast Alaska.

The complaint alleges that two streams of red salmon, one seeking to spawn in the upper waters tributary to Salmon Bay and the other the upper waters of Barnes Lake, annually pass through these waters. Until a regulation of the Service forbidding all fishing for commercial purposes there, appellant annually seined in both bays from 80,000 to 375,000 red salmon. The method of such prohibition is asserted to be an excessive abuse of the regulatory power conferred by Congress.

It is alleged that the Service has licensed a series of fish traps taking salmon from these two streams. One is on the inside of Warren Island, another on Kosciusko Island, both in Warren channel. Two other such traps are near Port Protection. Other traps so licensed are on the north shore of Prince of Wales Island between Port Baker and Red Bay.

The last and most effective of the traps is a pile or driven trap at point Colpoys. These licensed traps yield fish to the licensees for 24 hours of the day with the exception of their opening for 36 hours a week. The salmon escaping through this weekly 36 hours at Point Colpoys are deemed by the Service as just sufficient to perpetuate the two streams of fish, thereby requiring the Tribe to give up its commercial fishing in these waters. On the hearing here it was admitted that the Point Colpoys license had been annually renewed to the same non-Indian licensee for a number of years.

The tribe strongly contends that, assuming any power to regulate its fishing in the two bays, it is an excessive abuse of the Congressional regulatory power to give to the Point Colpoys licensee the right so to deplete the fish that only enough are allowed to pass through for reproductive spawning and hence require the denial of commericial fishing in these two bays. The only rational regulation, it is contended, would be to permit only such trapping at Point Colpoys as would allow the emergence of sufficient salmon for the established commercial take of the Tribe in the bays in which it claims its exclusive right of fishing.

Congress on August 13, 1946, by Public Law 726, 79th Congress, 25 U.S.C.A. § 70 et seq., created a Commission giving to Alaska Indians and others the right to litigate before it the following claims for wrongful governmental action:

"* * * (1) claims in law or equity arising under the Constitution, laws, treaties of the United States, and *Executive orders of the President;* * * * and (5) claims based upon fair and honorable dealings that are not recognized by any existing rule of *law or equity.* * * *" (Emphasis supplied.)

Before the Commission no claim arising prior to August 13, 1946, is barred by the statute of limitations. Hearings may be had and evidence taken in Alaska. It may

be that the Tribe's claims here are within the wide area of the Commission's jurisdiction.

We agree with the appellees that the action was properly dismissed. It is the Tribe's contention that "the United States is now, and during all the times hereinafter mentioned has been since 1867, the guardian of the real and personal property of said tribe including the chose in action hereinafter set forth." Pursuant to that contention the Tribe entitled the plaintiff in its complaint as seeking relief as the Tribe "ex rel United States of America, as Guardian of said tribe," and again in the complaint the Tribe states that the suit is "ex rel United States of America as guardian of said tribe."

The suit is thus seen to be one by the United States as the Tribe's guardian. The complaint discloses to the contrary that the United States has not authorized a suit by relation or otherwise. The complaint seeks to justify its claim that the suit is brought in that capacity because the Tribe has requested one John Collier, Commissioner of Indian Affairs, to bring such a suit for the United States as guardian and that he has failed so to do. Assuming that the United States can in any case be forced so to initiate such litigation for its ward, the Commissioner of Indian Affairs has no statutory power in that respect and the request to him is of no avail to the Tribe.

The judgment is affirmed.

MATHEWS, Circuit Judge, concurs in the result.